IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Michael R. Romero
#304893/4948464
14100 McMullen Hwy, SW/NBCI
Cumberland, Md 21502

*(Full name, date of birth, identification #, address of petitioner)*
**Plaintiff,**

v.

Lt. William Clayton; Adrion
Christopher, c/o II; R.N.
Sarah Johnson- Warden Walter
West; D. Evans, c/o II. --- All
Individually and in their
official capacity - 30420
Revells Neck Rd-Westover, Md 21890
ECI

*(Full name and address of respondent)*
**Defendant(s).**

FILED _____ ENTERED
LODGED _____ RECEIVED

APR 30 2021

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Case No.: _____
*(Leave blank. To be filled in by Court.)*

Jury Trial Demand

## COMPLAINT

I. Previous Lawsuits

　A. Have you filed other cases in state or federal court dealing with the same facts as in this case or against the same defendants?

　　YES ☐   NO ☒

　B. If you answered YES, describe that case(s) in the spaces below.

　　1. Parties to the other case(s):

　　　Plaintiff: _____

　　　Defendant(s): _____

　　2. Court (if a federal court name the district; if a state court name the city or county):

　　　_____

3. Case No.: _____

4. Date filed: _____

5. Name of judge that handled the case: _____

6. Disposition (won, dismissed, still pending, on appeal): _____
   _____

7. Date of Disposition: _____

II. Administrative Proceedings

   A. If you are a prisoner, did you file a grievance as required by the prison's administrative remedy procedures?

   YES ☒   NO ☐

   1. If you answered YES:

      a. What was the result? _Procedurally dismissed_ _____

      b. Did you appeal? _____

         YES ☒   NO ☐

   2. If you answered NO to either of the questions above, explain why: ____
      _____
      _____

III. Statement of Claim
     (Briefly state the facts of your case. Include dates, times, and places. Describe what each defendant did or how he/she is involved. If you are making a number of related claims, number and explain each claim in a separate paragraph.)

_Cruel and Unusual Punishment - A violation of the U.S. Constitution... On February 11, 2020, Defendant William Clayton was deliberately Indifferent to Plaintiff's Continues on Addendum:_

## III. Statement of Claim

health, safety and welfare when he ordered Plaintiff to: "bring a 200 lb Locker to the cell door," approximately five to eight feet. An order Defendant Clayton was not authorized to give based on Plaintiff's numerous medical conditions. i.e., Plaintiff's left shoulder could have dislocated - Plaintiff has had three ACL operations on his Right knee - Currently Plaintiff wears Orthopedic Shoes due to a bone that did not set right, which sticks out.

Plaintiff cited Medical conditions and refused to bring the 200 lb Locker to the cell door. As a result, Defendant Clayton ordered Plaintiff's confinement in disciplinary segregation.

Upon entering the disciplinary segregation unit (HU-4)... after being stripped searched and placed in a holding cell awaiting a cell - Plaintiff was again given a direct order he could not comply with due to medical reasons to cuff-up behind his back to be escorted to a cell - Plaintiff refused. Thus, Plaintiff was left in the holding cell for approximately four hours. Thereafter, Plaintiff was hand-cuffed in front and taken to a cell which housed a gang member who

3.

For approximately three weeks Prior was refusing all cell-buddies unless it was one of his own gang. (Plaintiff is a non-gang member). Basicly, Plaintiff was being set up by security staff to be assaulted or in Protecting himself, assault someone - A common event by security staff at Eastern Correctional Institution (ECI). Instead of taking the bait and Fighting with this gang member inmate, when a officer walked by the cell-door Plaintiff and the cell-buddy both told officers they were not getting along. The officers stated: "Well if you two don't Fight, we're not moving you." Thereafter, when it came time to leave the cell and go take a shower, Plaintiff was ordered by Defendant Evans to hand-cuff in the back - Had Plaintiff refused, his cellie would of been denied a shower, which with 100% certainty would have caused a fight between Plaintiff and his cellie - So Plaintiff had no choice but to cuff-up in the back even though all Defendant's herein were made aware of Plaintiff's "Settlement agreement" of 2017 (Romero v. Clem, et al., 8:15-cv-03152-DKC) to not be hand-cuffed in the back...

4.

When the cell door opened and Plaintiff stepped out while hand-cuffed in the back, a violation of the court settlement agreement of 2017, an officer stated to Defendant Evans: "He, Plaintiff, cannot come out for shower." So Defendant Evans ordered Plaintiff to step back into the cell, Plaintiff refused stating: "I'm not going back in the cell." Immediately thereafter and without any provocation Defendant Evan slammed Plaintiff into the wall and then body slammed Plaintiff head first to the cement floor while hand-cuffed in the back. Then approximately seven other officers attacked Plaintiff while he was on the ground whereas he suffered a concussion. The preceding was all on camera—whereas, Plaintiff requested the camera footage to be preserved as evidence. Plaintiff was taken to a holding cell and left there approximately four hours waiting to be examined by a nurse who was already there within five minutes. On camera, the nurse never touched Plaintiff to examine him, nor were the handcuffs removed from Plaintiff's back, no referrals were made for X-Rays or a

5.

Provider even though Plaintiff stated to the nurse that he sustained a concussion and he thinks his L-shoulder dislocated.

For nine days Plaintiff was deprived emergency medical care. He turned in numerous sick-call requests in to Defendant Johnson.

Finally, on February 20, 2020, Plaintiff was summoned by Defendant Johnson for his emergency sick-calls- only because Plaintiff contacted Department of Public Safety and Correctional Services (DPSCS) head-quarters. Defendant Christopher came to escort Plaintiff to the HU sick-call room, which has a camera Plaintiff requested the footage be preserved for evidence.

Upon entering the HU sick-call room to be examined by Defendant Johnson, firstly, Plaintiff requested that the officers be ordered out of the room as his medical disorders are confidential - He was ignored. Then Defendant Johnson did everything in her power to down-play and deny any of Plaintiff's medical disorders. i.e., Possible L-shoulder dislocation, concussion nine days previously, black-outs. Defendant Johnson failed to put/refer Plaintiff for X-Rays or to see a physician provider and failed to even

6.

physically examine Plaintiff. Only when Plaintiff asked Defendant Johnson: "If she was going to physically examine him," did she began to examine Plaintiff. On camera, Defendant Johnson stepped behind Plaintiff, and without having the hand-cuffs removed, or give warning to Plaintiff, Defendant Johnson without asking Plaintiff to un-button his jump-suit, she grabbed Plaintiff's collor and yanked the collor down with such force it scarred Plaintiff to scream out — Immediately thereafter, Defendant Christopher standing right next to Plaintiff stated: "zero tollerance on disrespect," and stated: "He will remove me from the medical room if I scream out again upon examination." I stated for him "to mind his business" — Defendant Christopher stated to me: "Fuck-you," I stated: "Fuck you and your momma." Defendant Christopher with extreme force grabbed Plaintiff by the jump-suit while hand-cuffed in front and yanked him out of the chair absent any physical provocation, while on camera, and slammed Plaintiff into the wall, outside in the hall under another camera, into the

7.

wall again, slid Plaintiff's body against the hall-way wall on camera with Plaintiff hand-cuffed in front, threatening Plaintiff "if he does not shut-up he, Defendant Christopher will slam Plaintiff into the window wall coming up" — whereas, true to his word, upon arriving to the window wall, under camera, Defendant Christopher slammed Plaintiff's face into the window wall, and simultaneously, opened the door entrance to the front of my HU tier-C, where there is no camera footage, a blind-spot, and body slammed Plaintiff to the cement floor — whereas, approximately ten officers showed up and began punching/kicking Plaintiff; whereas, Plaintiff suffered a concussion, fracture to his head where blood appeared; the preceding occurred within 30 seconds of the sick-call visit with Defendant Johnson, use of excessive force Defendant Johnson instigated by yanking Plaintiff's collar. Upon returning to the HU sick-call room within 30 seconds, under camera view, in a wheel chair, blood on the forehead, Plaintiff stated to Defendant Johnson that he was assaulted and sustained numerous injuries,

8.

including the concussion and fracture to the head that caused the blood and Defendant Johnson under camera never examined Plaintiff, referred him for X-Rays or a specialist Provider and allowed security to house the Plaintiff in a "staff alert," cell, with no lifes basic necessities. i.e., No Mattress, No bedding, No toiletries, basicly a strip-cell with his clothes on for four days. Plaintiffs orthopedic shoes were never given to him, the Plaintiff had to walk in the strip-cell barefooted with a bone sticking out under his right foot. Denied emergency medical care for approximately 30 days.

Plaintiff authored numerous letter to the Warden, Defendant West, because ARP's, grievances were being denied to Plaintiff. Whereas, Plaintiff explained the entire preceding to Defendant West and received No positive response.

As a result, Defendant West responded by retaliating against Plaintiff and had Plaintiff reclassed from medium security to Maximum security and in violation of Due process held Plaintiff in Disciplinary confinement as a Administrative

9.

segregation Prisoner for over six months before Transferring Plaintiff to a Maximum Security Prison.

All Defendant's supra, were in fact deliberately indifferent to Plaintiff health, safety, and welfare — And caused harm on Plaintiff for the very purpose to cause harm, which constitutes use of excessive force and further denied Plaintiff necessary emergency medical care, specialist care and were deliberately indifferent to Plaintiff's medical care.

IV. Relief
   (State briefly what you want the Court to do for you.)

   a) Compensatory damages: $1,000,000

   b) Punitive damages: $10,000,000

   c) Attorney Fees and costs

   d) Injunction

   SIGNED THIS 7th day of April, 2021.

   *Michael Romero*
   Signature of Plaintiff

   Michael R. Romero
   Printed Name
   #304893/4948464
   14100 McMullen Hwy-SW/NBCI
   Cumberland, Md 21502
   Address

   N/A
   Telephone Number

   N/A
   Email Address

/1.