IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL R. ROMERO,

   Plaintiff,

v.

LT. WILLIAM CLAYTON, *et al.*,

   Defendants.

Civil Action No.:  PX-21-1062

**MEMORANDUM OPINION**

In this civil rights action filed pursuant to 42 U.S.C. § 1983, inmate Michael Romero alleges that Defendants Lieutenant William Clayton, Correctional Officer II Adrion Christopher, Registered Nurse Sara Johnson, former ECI Warden Walter West, and Correctional Officer II Daric Evans at Eastern Correctional Institution ("ECI") used excessive force, rendered constitutionally inadequate medical care, denied him due process, and retaliated against him by reclassifying him as a maximum security inmate and placing him on administrative segregation. ECF No. 1.  All Defendants moved to dismiss the Complaint, or alternatively for summary judgment to be granted in their favor.  ECF Nos. 12, 30.[1]  The Clerk notified Romero of his right to respond.  ECF No. 13, 17, 39.  To date, Romero has opposed Defendant Johnson's motion. ECF No. 19.  The time to respond has long passed, and based on review of the pleadings, with no hearing necessary, *see* Local Rule 105.6 (D. Md. 2021), the Court construes the motions as ones for summary judgment and grants them in favor of Defendants.

---

[1] Defendant Johnson's Motion was apparently docketed twice, and the two filings appear to be identical.  *See* ECF No. 12, 16.  The Court considers the first filed to be the operative motion (ECF No. 12).  The Clerk shall strike ECF No. 16 from the docket.

1

I. **Background**

The parties have submitted evidence beyond the four corners of the Complaint, which the Court construes most favorably to Romero as the non-moving party. The Complaint concerns two incidents of alleged excessive force that took place on February 11 and 20, 2020, and related claims of inadequate medical care and improper security classifications that followed. The Complaint avers that on both occasions, correctional officers beat Romero in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. ECF No. 1. The Complaint further alleges that Nurse Johnson delivered constitutionally inadequate medical care and Warden West denied him due process, retaliated, placed him in segregation, and upped his security level without legitimate cause. *Id*.

The Court describes each incident and its aftermath below.

A. **February 11, 2020, Incident**

On February 11, 2020, ECI officers had been replacing 50-pound metal lockers with safer polyvinyl bags in inmate cells. ECF No. 30-7 at 2. To facilitate the process, inmates were required to clean out their lockers and place their personal items by the cell door. *Id.* Officer Clayton ordered Romero to move his locker, but Romero refused to comply because he suffered from bad knees and other ailments. *Id*. at 2-3. In response, Clayton contacted the medical department regarding Romero's medical conditions and learned that Romero had no "limitations" that would prevent him from following Clayton's instruction. *Id*. at 3. Romero nonetheless refused to comply, becoming "loud about his resistance" and "agitating other inmates." *Id*. Corrections officers removed Romero from the tier and placed him into administrative segregation. ECF No. 30-5 at 65.

Later that day, when the time came for Romero to shower, Defendant Officer Evans handcuffed Romero behind his back prior to escorting him to the showers. ECF No. 30-9 at 2. Unbeknownst to Evans, Romero was supposed to be cuffed in front. ECF No. 19-2 at 2; ECF No. 30-9 at 2.

As Romero stepped out of the cell, Officer Evans received instruction to delay the escort. ECF No. 30-9 at 3. Officer Evans asked Romero to return to the cell, but Romero refused. ECF No. 30-5 at 6. According to Officer Evans, Romero appeared as if was going "to try to break free and run down the tier hall." ECF No. 30-9 at 3. In response, Officer Evans physically secured Romero, who resisted Evans' efforts. ECF No. 30-5 at 6. Video surveillance footage depicts Romero pulling away from Evans, prompting the officer to push Romero against the wall, pull him to the ground, and restrain him. ECF No. 30-5 at 18 (00:09 sec. – 00:15 sec.).

Romero was eventually escorted to the medical unit. ECF No. 30-5 at 18. Romero told the nurse that he believed he had a concussion, a dislocated left shoulder, and a hyperextended right knee. ECF 12-4 at 3; ECF No. 19-3 at 1; ECF No. 12-4 at 3. The nurse found Romero to be alert and verbal, but irritated and disengaged; he also had minimal swelling on the left side of his head, was breathing normally, and otherwise was stable. *Id.* Romero was sent back to his cell.

Thereafter, the prison investigated the incident. Romero told the investigator that he had been upset about not being able to shower, but he understood why Officer Evans needed to restrain him. Romero also confirmed in writing that he "waive[d] all rights concerning any liability on officers." *Id*; ECF 30-5 at 27.

Romero sought follow up medical treatment on February 11, 13, 16, and 19, 2020, continuing to complain that he had a "concussion," a dislocated left shoulder, and an injured knee. ECF No. 12-4 at 11-14. Medical staff concluded that none of Romero's complaints required

3

urgent care so he would be scheduled for follow up care "through the normal sick call process." ECF No. 25-1 at 2.

### B. February 20, 2020, Incident

On February 20, 2022, Romero attended a sick call visit where Nurse Johnson examined him. During the visit, Romero walked without difficulty, had no head swelling or other abrasions, and denied blurry vision; but he did claim that had "blacked out" a couple of times the day after the February 11 incident. ECF No 12-4 at 20. According to Romero, he had to press Johnson to examine his shoulder, ECF No. 19-1 at 9, and when she did, Romero "jerked away and spoke rough to [her] in a mannerism suggesting re-injury." ECF No. 12-4 at 20; ECF. No 19-1 at 11. Officer Christopher, who had been present during the examination, admonished Romero not to speak disrespectfully to Nurse Johnson. ECF No. 12-4 at 20. Although Romero and Officer Christopher dispute precisely what Romero said, Officer Christopher ultimately escorted Romero out of the room. ECF No. 12-4 at 20. Video footage corroborates this exchange. ECF No. 30-5 at 18 (at 2:38). Johnson also noted that "due to [Romero's] actions," Johnson could not complete the examination. However, because Romero's vital signs were normal and he did not appear to be in pain, she concluded that he had neither a shoulder injury nor a concussion. ECF No 12-3 at 4.

Officer Christopher attests that once the two men were in the hallway Romero, who was front cuffed, spun toward Christopher, stating "I will fuck you up." ECF No. 30-10 at 3. In response, Officer Christopher took Romero to the ground and restrained him. *Id*. Romero, for his part, describes that Christopher, unprovoked, slammed Romero into a wall and then onto the floor. ECF No. 19-1 at 12. During the encounter, Officer Christopher sustained injury to his knee requiring medical attention.[2] Romero was returned to the medical unit by wheelchair to ensure

---

[2] The placement of surveillance cameras rendered the video footage of this incident largely unhelpful. ECF No. 3-5 at 18.

a "safer transport." ECF No. 30-5 at 47. Once in the medical unit, Romero stood independently and did not "show any signs of weakness or disorientation." ECF No. 30-6 at 2; ECF No. 30-5 at 47.

Nurse Johnson examined Romero, noting that he sustained a "superficial injury" to his head described as a "dime-sized reddened region." ECF No. 12-4 at 22. Although Romero had no other symptoms, Johnson referred him for follow-up evaluation to rule out a concussion. ECF No 12-4 at 23. Nurse Johnson also instructed Romero to return to medical if his symptoms persisted. ECF No. 12-3 at 5; *see also* ECF No. 30-5 at 18 (video footage capturing Johnson's examination of Romero).

In light of his threat to "fuck up" Officer Christopher, Romero was placed in a staff-alert cell. ECF No. 30-15 at 2. A staff-alert identifies those inmates "who pose a substantial threat to the security and order of the institution." *Id*. While on staff-alert, an inmate may lose or have restricted any privilege or personal item. *Id.* Johnson had no input or influence over the prison's decision to place Romero on staff-alert. ECF No. 12-3 at 6.

On February 25, 2020, Nurse Johnson examined Romero again for complaints of concussion, right knee hyperextension, and left shoulder dislocation. ECF No. 12-4 at 24. Next, on March 14, 2020, Nurse Johnson visited Romero in his cell to renew his medications and respond to other complaints regarding the confiscation of his orthopedic shoes and his request for an x-ray of his left shoulder. *Id.* at 4. On March 28, 2020, Physician Assistant Bruce Ford examined Romero in the medical unit.[3] *Id.* at 7. Romero complained to Ford that his right knee "gives out once in a while," and that he continues to experience shoulder pain. *Id.* at 7-9. On Ford's orders,

---

[3] As a physician assistant, Ford can order x-rays and refer patients for follow-up consultations. ECF No. 25-1 at 3.

Romero's shoulder was x-rayed on April 6, 2020. *Id.* at 10. The x-rays revealed nothing of significance. *Id.*

### C. Romero's Grievances

Romero attempted to file administrative remedy procedure (ARP) grievances and wrote Warden West directly about the above-described incidents. During this time, Romero spent six months in administrative segregation and was ultimately transferred to a maximum-security facility. ECF No. 30-5 at 3-4. Warden West denies any involvement in the designation or classification process. ECF No. 30-3 at 2. West does confirm, however, that ECI's Special Housing Committee and Case Management departments had recommended the placements because of Romero's "history of violent crimes and multiple escapes from prison in New Mexico and his recent assaultive behavior directed at correctional staff, including one instance that caused a correctional officer to have to seek outside medical attention." *Id.*

## II. Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. Such motions implicate the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"

*Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Romero was placed on notice that defendants sought summary judgment (ECF Nos. 13, 17, 39) and submitted his own record evidence for the Court's consideration. ECF No. 19. Accordingly, the Court treats the motions as one for summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III.    Analysis

Defendants argue that insufficient evidence exists for any of Romero's claims to survive challenge. The Court turns first to Romero's allegation that officers unconstitutionally subjected him to excessive force.

### A. Excessive Force

Excessive force in the prison context is analyzed under the Eighth Amendment right to be free from cruel and unusual punishment. An inmate maintains the right to be free from an officer's "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). The claim "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered [by], or injury inflicted on, the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).

As to the objective component, an inmate must demonstrate his injury is sufficiently serious to rise above the level of *de minimis* harm. *Iko,* 535 F.3d at 238 (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)). As to the subjective component, the inmate must show that the officer acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Whether an officer "acted with wantonness" depends on "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

Romero alleges that all Defendant Officers subjected him to excessive force. As to Defendants Lieutenant Clayton and Warden West, no facts support that either exercised any force against Romero, let alone excessive force. Such a claim can proceed only against defendants who personally participate in the alleged constitutional violation. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability does not attach to supervisory officials unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Because no evidence suggests either defendant had been involved at all in either the February 11 or 2, 2020 incidents, summary judgment is granted in their favor.

As to Nurse Johnson, Romero maintains that during the February 20, 2020, examination, Johnson "grabbed and . . . with all her might yanked down on [his] collar." ECF No. 19-1 at 10. Although the video footage of this incident demonstrates otherwise, ECF No. 30-5 at 18, even if Johnson had "yanked" on Romero's collar, that alone cannot sustain an Eighth Amendment excessive force claim. Nothing in the record demonstrates the "yank" inflicted any injury on Romero; thus, this use of force was *de minimus*, at best.

Likewise, the evidence viewed most favorably to Romero simply does not support an excessive force claim against either Officers Evans or Christopher. During the February 11, 2020, incident, it is uncontroverted that Evans restrained Romero because Romero appeared ready to "break free and run down the tier hall." ECF No. 30-9 at 3. Even Romero conceded that Officer Evans "had to respond" to Romero's resistance, and that Evans "was not to blame for the incident." ECF No. 30-11 at 3; *see also* ECF 30-5 at 27. Accordingly, no evidence demonstrates that Evans acted "maliciously and sadistically for the very purpose of causing harm[;]" rather, Evans

9

responded "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Regarding Officer Christopher, the officer attests that Romero spun toward him and threatened him, while front-cuffed, prompting his use of force. ECF No. 30-10 at 3. Romero disputes that he provoked Officer Christopher and instead accuses the officer of threatening him before slamming him into the wall and onto the floor. ECF No. 19-1 at 12. Setting aside the reason for Officer Christopher's use of force, the record viewed most favorably to Romero establishes that he did not suffer a sufficiently serious injury to support an Eighth Amendment claim. Romero sustained no more than a "dime sized" abrasion to his forehead. ECF No. 12-4 at 22-23. Because the injury suffered by Romero was no more than *de minimis*, the claim necessarily fails, and summary judgment must be granted in Defendants' favor.

### B. Denial of Adequate Medical Care

The Court next turns to Romero's asserted Eighth Amendment denial of medical care. The Eighth Amendment protects inmates from receiving constitutionally inadequate medical care. To succeed on this claim, Romero must adduce sufficient facts to show that a defendant delayed or denied his care with deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of prisoner's need for medical attention, and failed to either provide such care or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Scinto v. Stansberry*, 841 F.3d 219, 225

(4th Cir. 2016). "A medical condition is shown as objectively serious when it would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Formica v. Aylor*, 739 Fed Appx. 745 (4th Cir. 2018), *citing Gayton v. McKoy,* 593 F.3d 610, 620 (7th Cir. 2010).

Additionally, as to a defendant's subjective recklessness, "[t]rue subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Romero principally contends that Nurse Johnson's refusal to treat him for a "concussion," a dislocated shoulder and other injuries amounts to an Eighth Amendment denial of medical care. The Court disagrees. On February 20, 2020, Johnson examined Romero and noted that he was walking without difficulty and did not appear to be in any pain or distress. ECF No. 12-4. Later that day, after Officer Christopher had taken Romero to the ground, Johnson again examined him, and noted the "dime-sized" abrasion on his forehead. *Id.* at 22. And even though Romero had exhibited no signs of concussion, Johnson referred him for a follow up examination and cautioned him about staying vigilant should he develop symptoms. ECF No 12-4 at 23.

Viewing the record most favorably to Romero, no evidence supports that Johnson had been deliberately indifferent to any of Romero's medical needs. Although Romero may have believed he suffered from all kinds of maladies, Johnson evaluated him and based on both clinical and diagnostic measurements, prescribed follow up care when necessary. Romero's mere disagreement with Johnson's medical judgment alone cannot sustain the claim. *See Taylor v.*

*Barnett*, 105 F. Supp. 2d 483, 487 (E.D. Va. 2000) (citing *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985) ("Nor does a prisoner's disagreement with medical personnel over the course of his treatment make out a cause of action."); *see also Hendrick v. Gordon*, DKC-14-2398, 2015 WL 5091913, at *9 (D. Md. Aug. 27, 2015) ("disagreement with the medical care provided to him does not show deliberate indifference, nor does it support a claim of constitutional dimension."). Accordingly, the Court must grant summary judgment in Johnson's favor.

### C. Denial of Due Process and Retaliation

Last, Romero complains that Warden West retaliated against him by reclassifying his security level, placing him on administrative segregation for six months, and effectuating his transfer to a maximum-security facility. ECF No. 1 at 9-10. Romero also frames West's actions as a violation of due process.

The due process claim is easily rejected. Romero is not entitled to be housed at any particular facility or receive specific programming "so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). *See also Cole v. Pepper*, No. GJH-18-3097, 2019 WL 470295, at *7 (D. Md. Sept. 30, 2019). Unless the claimed denial presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," no such cause of action shall lie. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See also Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015).

At best, Romero expresses dissatisfaction with the reclassification and transfer. But he adduces no evidence that his confinement conditions that were unduly or atypically harsh. Indeed, Romero does not dispute his "history of violent crimes and multiple escapes from prison in New Mexico and his recent assaultive behavior directed at correctional staff, including one instance that

caused a correctional officer to have to seek outside medical attention." ECF No. 30-3 at 2. This alone supports that the institution's designation and classification decisions were warranted.

With respect to Romero's retaliation claim, to be sure, his right to petition for redress of grievances is protected under the First Amendment. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *see also Hudson v. Palmer*, 468 U.S. 517, 523(1984) (recognizing First Amendment right to petition for redress of grievances). Accordingly, a retaliation claim shall lie if Romero generates some evidence that officers retaliated against him for exercising such rights. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Fatal to the claim, however, is that no evidence suggests any adverse action had been tied to his ARPs or other complaints to West. Nothing supports that West had been involved in Romero's designation or classification, and so, without more, West cannot be held to account for a retaliation claim. ECF No. 30-3 at 2-3.

In the end, viewing the record evidence most favorably to Romero, none of the constitutional claims survive challenge. Defendants' motions for summary judgment are thus granted entirely.[4]

## IV.   Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss, or in the Alternative, for Summary Judgment, will be GRANTED (ECF No. 12, 30). ECF No. 16 will be STRICKEN as duplicative. Defendants Motion for Extension will be GRANTED *nunc pro tunc* (ECF No. 29).

---

[4] The Court also grants Defendants' motion for extension of time *nunc pro tunc* (ECF No. 29) and motion to seal certain records that include sensitive information such that redaction is impractical. ECF No. 32-1. Romero has filed a "Motion to Investigate" whether the prison video footage submitted in this matter had been "professionally manipulated" or otherwise altered. ECF No. 34. Nothing supports Romero's bald contentions. Thus, the motion to investigate is denied.

Defendant's Motion to Seal (ECF No. 32) will be GRANTED.  Plaintiff's Motion to Investigate will be DENIED (ECF No. 34).

A separate Order follows.

/S/
_____
Paula Xinis
United States District Judge